## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**UNITED STATES OF AMERICA**

**v.**                                              **Case No.  8:05-cr-131-T-30MSS**

**RONALD ALAN LUPI**
**_____/**

## REPORT AND RECOMMENDATION

**THIS CAUSE** comes before the Court upon review of the June 14, 2007, psychiatric evaluation of Defendant Ronald Alan Lupi by Michael Gamache, Ph.D. finding Defendant presently competent to answer to the pending charges against him (the "June 2007 report").[1]  The Court held a competency hearing on August 7, 2007, during which it heard the testimony of Defendant and Dr. Gamache.  Upon reviewing the record and the additional collateral information provided to the Court by the Government, observing the Defendant and hearing his testimony during the competency hearing, and in full consideration of the parties' positions, the Undersigned **REPORTS** and **RECOMMENDS** that Defendant be found competent to proceed to trial.

---

[1] Defendant is charged in a six count indictment with willfully failing to file income tax returns and income tax evasion.  (Dkt. 1)

I.      BACKGROUND

Dr. Gamache's June 2007 report is the fourth psychiatric evaluation of Defendant in this case and the second psychiatric evaluation performed by Dr. Gamache.  In the three previous reports, Dr. Gamache, Dr. Rodolfo A. Buigas, a Forensic Exam Coordinator at the Federal Detention Center in Miami, Florida, and Drs. Jill Grant and Bruce Berger, Staff Psychologist and Psychiatrist at the Federal Medical Center in Butner, North Carolina, each recommended that Defendant be found incompetent due to a subtle delusional disorder.[2]

In his November 16, 2005, report, Dr. Gamache found that Defendant was incompetent because he lacked a rational understanding of the charges against him and lacked the ability to assist properly in his defense due to his delusions and "peculiar beliefs."  Dr. Gamache qualified his opinion, however, stating that he could not determine the full extent of Defendant's behavioral and functional limitations because Defendant would not permit Dr. Gamache to interview his family and friends.   Dr. Gamache noted that Defendant's delusions appeared to be

_____

[2]

A delusional disorder was defined by Dr. Gamache in his November 2005 report as "a type of psychotic condition or thought disorder characterized by what are generally considered to be nonbizarre delusions.  Delusions are false beliefs that are based on incorrect inferences about external reality that are maintained firmly despite what almost everyone else might believe and despite proof or evidence to the contrary."  In sum, Defendant's delusional disorder was based on his assertions that he was a third party intervener in the case, not the named defendant.  Defendant did not believe he had a legal name and told the examiners that the name Ronald Alan Lupi was a fictional entity.  Additionally, Defendant believed that his case could be settled with the payment of a fine and that he would not have to serve any period of incarceration.

"circumscribed in nature and relate[d] specifically to issues of the legal authority of the federal government over his private activities."  In his May 2, 2006, report, Dr. Buigas noted that Defendant had average cognitive functioning and exhibited no impairment in his ability to understand basic legal information or reasoning. However, Dr. Buigas found that Defendant was significantly impaired in his appreciation of the legal processes and did not seem willing to consider realistic alternatives to his legal strategy in this case.

The Court held a competency hearing on Dr. Buigas' report on June 8, 2006. At that time, the Government asserted no objections to Dr. Buigas' report. Thereafter, the Government notified the Court that it intended to contest Dr. Buigas' report. (Dkt. 90)  On July 10, 2006, the Court held another competency hearing. (Dkt. 92)  At that hearing, the Undersigned orally reported and recommended that Defendant be deemed incompetent based on the evaluations of Drs. Gamache and Buigas.  The Undersigned recommended that Defendant be committed to the custody of the Federal Bureau of Prisons and transported to a medical treatment facility for further evaluation and consideration of the appropriate methods of treatment to restore him to competency.[3]  (Hr'g Tr. 57, July 10, 2006)  In response to the Court's order, Drs. Grant and Berger at the Federal Medical Center in Butner, North Carolina likewise opined in their December 2006 report that Defendant was

---

[3]

The oral Report and Recommendation was adopted by the District Judge on July 11, 2006, as the parties waived the ten day period to file objections to the Report and Recommendation.  (Dkts. 94,96)

incompetent due to a delusional disorder and requested that the Court involuntarily medicate Defendant to restore his competency.

Rather than seek judicial approval for the involuntary administration of "antipsychotic" medication, the Government asked the Court to permit Dr. Gamache to reassess Defendant in light of new information it had received concerning Defendant's beliefs.  (Dkts. 113)  Specifically, the Government asserted that Defendant's beliefs were governed by the "Redemptionist" tax protester philosophy and were, therefore, not unique delusions, but mere recitations of a widespread philosophy.  The Government contended the new information, i.e., audio recordings of Defendant's telephone conversations and articles regarding the philosophy, provided insight into Defendant's ideologies that was not available to any of the examiners during their previous assessments.  The Court granted the Government's request and Defendant was reassessed by Dr. Gamache on June 6, 2007.

On August 7, 2007, the Court held a competency hearing following Dr. Gamache's second psychiatric evaluation of Defendant.  In his report, Dr. Gamache found that Defendant presently meets the criteria for competency.  Dr. Gamache stated that his new opinion was influenced by the collateral information provided to him by the Government.  Dr. Gamache asserted that his June 2007 report differed from his previous report because his November 2005 finding that Defendant suffered from a delusional disorder was based on his belief that Defendant's beliefs were "unique, personal beliefs, originating internally and not a part of any shared beliefs

with others, with consultants, or with some subculture of the population." In the June 2007 report, Dr. Gamache found that Defendant did not suffer from a delusional disorder because his beliefs were not unique to Defendant and were not the product of and did not originate from some mental illness.

Additionally, Dr. Gamache noted discrepancies between the recorded telephone conversations and Defendant's responses during the June 2007 evaluation. A majority of the telephone recordings consist of conversations between Defendant and his wife where he asked her to manage his business affairs and directed her to call certain people to assist with his case. For example, Defendant asked his wife to search for a private psychiatrist, to contact a private attorney and to contact other individuals who could assist Defendant in his defense. According to his report, during the evaluation Defendant denied having had conversations with his wife concerning his potential prison term and denied directing his wife to contact a private attorney. Dr. Gamache noted that Defendant's responses were inconsistent with the collateral material. The inconsistencies indicated to Dr. Gamache that Defendant was "likely intentionally misrepresenting" and "engaging in deceit."

Further, Dr. Gamache noted that Defendant produced a valid Florida driver's license during the June 2007 evaluation that was issued on May 3, 2004. Dr. Gamache stated that the production seemed to indicate that Defendant "had been untruthful" during his November 2005 evaluation when he claimed that he did not

possess a Florida driver's license. Based on Defendant's less than forthright responses to his questions and his review of the telephone conversations between Defendant and his family members and Defendant and some members of this "subculture," Dr. Gamache found that Defendant is capable of understanding and participating in the judicial process.

At the August 2007 competency hearing, the Government had no objection to Dr. Gamache's findings. Defendant's counsel maintained his assertion that Defendant is incompetent to proceed to trial for the reasons set forth by Drs. Buigas, Grant and Berger and for the additional reason that counsel contends he is unable to communicate effectively with his client.

## II.   DISCUSSION

A defendant is deemed competent to proceed to trial when he demonstrates (1) "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding'" and (2) "'a rational as well as factual understanding of the proceedings against him'" Cooper v. Oklahoma, 517 U.S. 348, 354 (1996) (quoting Dusky v. United States, 362 U.S. 402, 402 (1960)); Drope v. Missouri, 402 U.S. 162, 171 (1975). Here, Defendant appears to have a rational as well as factual understanding of the proceedings against him in that he understands the charges against him, he understands the adversarial nature of the judicial process and he understands the potential penalties. In each psychiatric report, the examiners found that Defendant appreciates the role of the judge, the jury, the prosecution and

defense counsel.  Further, despite his assertions to the contrary, the Court also finds that Defendant understands that he is the defendant in this case who is subject to punishment if convicted of the offenses as charged.

At the hearing, Defendant reasserted his position that he was not the named defendant in this case.  Despite acknowledging that he was "Ronald Lupi" for the purposes of being sworn under oath to testify at the hearing, Defendant asserted that he was a secured party acting on behalf of the defendant, the fictional entity Ronald Lupi.  Additionally, at the hearing Defendant reasserted his position that he did not have to serve time in prison because there was no "controversy" as payment had been made and the matter had been settled.  However, when pressed about the source of his beliefs, Defendant acknowledged the Court's authority over him and acknowledged that if his beliefs were wrong he could serve time in prison.

Specifically, Defendant testified that he learned about his current philosophy while he was in the hospital recovering from cancer.  He stated that he was told by some third party that the payment of taxes is voluntary.  Upon hearing that concept, he testified that he thought "like anybody else" in society that the idea of refusing to pay taxes was "crazy" and someone "would go to jail" for non-payment.  When asked by the Court whether he believed he could go to jail if the Court rejected his current beliefs and theories, Defendant commented "I guess the Judge . . . could do whatever they want to do to me whether it's right or wrong."  Defendant then stated that he did not think he could go to jail because he did not believe statutes applied

to individuals, only to fictional entities that have the same names as the individuals. However, Defendant acknowledged that as the representative, or surety, for the fictional entity Ronald Lupi he could be "crucified," i.e., suffer consequences, for the entity's non-payment of taxes.  Further, Defendant stated that if the Court refused to acknowledge his role as a surety, it could "put [him] in jail against [his] will."

A review of the collateral information also indicates that Defendant is aware that he is the defendant in this case subject to a potential prison term.  During his telephone conversations with others, Defendant repeatedly referred to himself as the defendant, acknowledged that he was represented by a "public defender," and was told that he could face four to five years in prison if convicted.  Defendant also indicated his understanding that if he is found to be incompetent, the Government cannot prosecute the case against him.  Quite clearly, Defendant understands that he is the person in this case that is subject to punishment if found guilty of the offenses charged.

The Undersigned also finds that Defendant has the ability to assist his counsel in his defense.  In determining whether a defendant is able to assist his attorney in his defense, consideration should be afforded to the judgment of defense counsel about the defendant's state of mind.  See, e.g., Medina v. California, 505 U.S. 437, 450 (1992) (stating that "defense counsel will often have the best-informed view of the defendant's ability to participate in his defense"); United States v. Sandoval, 365 F. Supp. 2d 319, 326 (E.D. N.Y. 2005) (finding the defendant incompetent based on

the judgment of defense counsel and the observations of the court).   However, defense counsel's observations are not necessarily dispositive.  See Segal, 398 F. Supp. 2d at 916.  The Court's observations of the defendant and the testimony of the defendant are also relevant to a competency determination.  See Sandoval, 365 F. Supp. 2d at 327 (citing United States v. Vamos, 797 F.2d 1146, 1150 (2d Cir. 1986) (stating "deference is owed to the district court's determinations based on observation of the defendant during the proceedings")).[4]  Defendant's counsel asserts that Defendant is incompetent as he cannot communicate effectively with his counsel and cannot testify relevantly due to his subtle delusions.

While it may be true that Defendant suffers from a subtle, finite delusion with respect to his learned beliefs regarding his requirement to pay taxes, the presence of some degree of mental illness does not equate to incompetence.  See Hall v. United States, 410 F.2d 653, 658 (4th Cir. 1969).   Throughout the hearing, Defendant remained composed, articulate and respectful to the Court.  Consistent with his views at the hearing that he is not the named defendant, when asked whether he intended to assist his counsel with his defense, Defendant stated that his

---

[4]

In Vamos, the court addressed the issue of whether the trial court erred in not conducting a competency hearing following two psychiatric evaluations.  797 F.2d at 1150. The court noted that the district court's failure to conduct a competency hearing was not reversible error when the defendant appeared competent during trial.  Id.   The court found that because the defendant's conduct at the trial, as observed by the trial court, did not provide a basis to question the defendant's competence, the trial court did not abuse its discretion in considering the defendant competent or failing to conduct a competency hearing.  Id. at 1151.

attorney "represents the defendant . . . he was court appointed to handle the affairs of the defendant.  All I can do is give him the appropriate instruments to carry that [representation] forward."   Defendant went on to express that he is not the defendant.   As stated above, this assertion is contrary to Defendant's acknowledgment during telephone conversations that he was in fact the defendant who was represented by a "public defender" who was appointed to help him in his defense.

Based on Defendant's recorded conversations, it appears Defendant disagrees with his counsel regarding the appropriate legal strategy to be employed in his defense.  In this regard, Defendant was able to make specific references to the regulations he believes support his convictions that his case has been settled and that all crimes are commercial, i.e., 27 C.F.R. § 72.11.[5]  Defendant has apparently provided documents to his counsel in support of his legal theories that were not submitted to the Court on his behalf.  These strategic disagreements do not serve as the basis for a finding of incompetency.  See Segal, 398 F. Supp. 2d at 917

---

[5]

| The Court: | Where do you get your views about the Court's obligations and the effect of your deposits and the acceptance of the Government's offer and so forth?  Where do those come from, those views? |
|---|---|
| Defendant: | Well, I believe one of the times I was here, I think I expressed to you that in the Code of Federal Regulations, Chapter 27, Section 72.11 it says that all crimes are commercial.  That being the case, it would conclude to me that there is some type of a contractual obligation or something similar along the line. |

Taken from the digital recording of the August 7, 2007, hearing held before the Undersigned.

(stating that "[e]ven if his attorneys consider some of his ideas impractical or illogical, the disagreement between defendant and his counsel regarding legal strategy does not mean that the defendant lacks sufficient present ability to consult with his attorneys.").   Additionally, the record reveals that Defendant is fully capable of providing adequate input to his counsel when necessary or convenient.  Defendant had sufficient ability to communicate with his counsel when he sought the Court's permission to work outside of his home (Dkts. 111,112), remove his Court-ordered electronic monitoring device (Dkts. 114, 118) and attend his daughter's wedding (Dkts. 121, 123).  Therefore, the Court finds that Defendant has sufficient present ability to consult with his lawyer and assist adequately in his defense.

## III.   CONCLUSION

Upon consideration and for the reasons set forth above, the Undersigned **REPORTS** and **RECOMMENDS** that the Court find Defendant presently competent to stand trial as he understands the nature of the charges against him and can assist in the defense of his case.

Respectfully **RECOMMENDED** in Tampa, Florida this 5th day of September 2007.

MARY S. SCRIVEN
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal. <u>See</u> 28 U.S.C. § 636(b)(1).


Copies furnished to:
Presiding District Judge
United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant
Defendant